In the

# United States Court of Appeals

### For the Seventh Circuit

No. 12-3561

ANDRIY YASINSKYY,

*Petitioner,*

*v.*

ERIC H. HOLDER, JR.,
Attorney General of the United
States,

*Respondent.*

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A088-182-430.

ARGUED JULY 9, 2013 — DECIDED AUGUST 1, 2013

Before EASTERBROOK, *Chief Judge*, and POSNER and
WILLIAMS, *Circuit Judges*.

WILLIAMS, *Circuit Judge.* Andriy Yasinskyy, a Ukrainian citizen, applied for asylum, withholding of removal, and relief under the Convention Against Torture, and an immigration judge rejected his requests for relief. The Board of Immigration Appeals upheld the denial of relief, and Yasinskky petitions for review. Although we are troubled by the IJ's conclusion that the harms Yasinskyy endured did not rise to the level of severity necessary to show past persecution, we see no reason to upset the IJ's refusal to grant withholding of removal because Yasinskyy has not shown the requisite level of government involvement in his mistreatment. We are not persuaded by Yasinskyy's other arguments in which he does not confront the adverse decisions of the immigration courts and misrepresents the content of the administrative record. We deny the petition for review.

## I. BACKGROUND

Yasinskyy came to the United States in November 2007 after he obtained an H-2B nonimmigrant visa from the American embassy in Ukraine. His visa was sponsored by Grand Market International Corporation and permitted him to work as a temporary employee at a grocery store in New York City. *See* 8 U.S.C. § 1101(a)(15)(H); 8 C.F.R. § 214.2(h). After working for six weeks, he traveled to Oregon to find better-paying employment, and he quit his job with Grand Market in January 2008. He began the process for obtaining a commercial driver's license, but when he showed up for his last exam, he was detained for being unlawfully present in the United States.

In February 2008 the Department of Homeland Security served Yasinskyy with a Notice to Appear charging that he had violated the conditions of his visa by terminating his employment with Grand Market. *See* 8 U.S.C. § 1227(a)(1)(C)(i). Yasinskyy moved to change venue from Seattle to Chicago, and in that motion he conceded the charge in the Notice to Appear and announced that he intended to seek asylum and withholding of removal. Yasinskyy first appeared before an immigration judge in Chicago in June 2009, and the following month he applied for asylum claiming past persecution based on political opinion.

At his removal hearing Yasinskyy testified about his political activities in Ukraine. In 2003 he had joined Fatherland, which was then an opposition party. Fatherland supported presidential candidate Viktor Yushchenko against Viktor Yanukovych, the incumbent Prime Minister and a member of the Party of Regions. During the summer of 2004, Yasinskyy took off work for a week to participate in campaign activities for the upcoming election. He participated in a demonstration and collected signatures in a small town on August 10. That night, he and another demonstrator were beaten by three strangers who, according to Yasinskyy, told them to leave town or face "even bigger problems." His friend called the police and minutes later officers arrived and summoned an ambulance. Yasinskyy was hospitalized for a week with a concussion and bruised kidney. The day after the assault, police investigating the incident visited him at the hospital. Yasinskyy explained that, because it had been dark, he did not see his attackers and could do little to assist the investigation. By the time he was released from the hospital, Yasinskyy

explained, the case had been closed because the police lacked evidence to pursue it.

It took Yasinskyy nearly a month to fully recuperate from the attack, and when he returned to work he was told that he had been fired because of his absence. Yasinskyy speculated that, because he had contacted his employer from the hospital and explained his absence, he must have been fired because of his political affiliation. Many of his coworkers belonged to the Party of Regions, said Yasinskyy, and company officials previously had warned that he could be fired if he did not abandon his support for Fatherland. Yasinskyy testified that after losing his job he experienced difficulty finding employment but sometimes obtained construction work through his father.

Yanukovych was declared the winner of the November 2004 presidential election, which sparked the "Orange Revolution." Yushchenko supporters, who alleged that Yanukovych's victory was the product of fraud, demonstrated in the streets and demanded that the Ukrainian Supreme Court invalidate the election results. The revolution was successful, and after a revote Yushchenko was inaugurated as president in January 2005. During the first month of the revolution, Yasinskyy demonstrated in Kiev with other Yushchenko supporters. Then one evening in January 2005, Yasinskyy continued, he was beaten again, this time by two men who insisted that they had warned him to stop campaigning for Fatherland. Yasinskyy added that he had been receiving telephone threats from anonymous callers who demanded an end to his political activity. As before, Yasinskyy said, he was treated for a concussion and an injured kidney. He continued

having headaches and kidney problems and in June 2005 received 10 days of medical treatment.

Yasinskyy explained that after this second attack he feared for his life but continued his political activities. Although he never again was physically assaulted, he continued receiving threatening phone calls and so, on the advice of his parents, moved to the United Kingdom in March 2006. He did not apply for asylum in the U.K., Yasinskyy explained, because he had hoped that the situation in Ukraine would improve and allow him to return. Yasinskyy did return to Ukraine a year later, in March 2007, but the threatening phone calls persisted. After six months he decided to apply for a work visa in the United States. He did not tell anyone at the American embassy about his fear of persecution, Yasinskyy testified, because no one asked him. He consulted a lawyer two weeks after arriving in the United States but didn't immediately apply for asylum because he was waiting for documents from Ukraine.

Finally, Yasinskyy testified, just months before his removal hearing the Ukrainian police had visited his Ukrainian address asking about his whereabouts and twice summoned him to appear at a local police station to discuss allegations of "hooligan activities" during the Orange Revolution. Yasinskyy asserted that members of Fatherland increasingly have been charged with crimes since Yanukovych became the president in 2010, and so he fears that he will be thrown in jail or killed by members of the Party of Regions if he returns to Ukraine.

The IJ found Yasinskyy credible but concluded that his testimony and supporting documents did not demonstrate eligibility for relief. Yasinskyy was barred from seeking

asylum, the IJ concluded, because he did not file within the 1-year deadline and did not demonstrate changed circumstances materially affecting his eligibility or extraordinary circumstances relating to the delay in filing his application. *See* 8 U.S.C. § 1158(a); 8 C.F.R. § 1208.4(a). Though Yasinskyy had not specifically addressed whether he met one of those exceptions, the IJ added, his purported explanation for waiting to file—delays in obtaining supporting documents—could not satisfy either exception.

Next, the IJ concluded that Yasinskyy was ineligible for withholding of removal because he had not demonstrated a clear probability that he would be persecuted on account of political opinion if he returns to Ukraine. Yasinskyy had failed to demonstrate past persecution, the IJ reasoned, because the evidence did not show that the Ukrainian government sponsored the beatings or telephone threats. And in any event, the IJ asserted, the harm (physical and economic) and threats Yasinskyy experienced never rose to the level of persecution. In reaching this last conclusion, the IJ first catalogued several of our prior decisions, dividing them between cases where we concluded that substantial evidence did or did not support a finding of no past persecution, *see Irasoc v. Mukasey*, 522 F.3d 727, 730 (7th Cir. 2008) (finding past persecution); *Zhu v. Gonzales*, 465 F.3d 316, 319–20 (7th Cir. 2006) (finding substantial evidence supported no past persecution); *Prela v. Ashcroft*, 394 F.3d 515, 518 (7th Cir. 2005) (finding no past persecution); *Dandan v. Ashcroft*, 339 F.3d 567, 573–74 (7th Cir. 2003) (finding no past persecution); *Asani v. INS*, 154 F.3d 719, 722–23 (7th Cir. 1998) (remanding for application of correct past persecution standard and expressing disbelief "that the

BIA does not believe that knocking a person's teeth out is harm enough to constitute past persecution"). The IJ then assigned Yasinskyy to one of those two camps:

> Here, the respondent has alleged that he was beaten twice, resulting in injuries to his head and kidneys, that he was repeatedly harassed by unknown assailants opposed to his political activities, and that he and his family received several threatening telephone calls. The amount of harm the respondent suffered, though, was significantly less than that in *Dandan*, *Irasoc*, or *Asani* and closer to that in *Zhu* or *Prela*. Though he was attacked twice and repeatedly threatened, his first attack resulted only in "light body harm" according to the documentation he submitted, and his second attack did not require immediate medical attention … This level of physical harm, without more, does not rise to the level of persecution. Moreover, he has not alleged that he received threats more significant or credible than a series of intimidating, anonymous phone calls.

The IJ also concluded that Yasinskyy had not shown that he is more likely than not to suffer future persecution if removed to Ukraine. The IJ deemed significant that Yasinskyy had lived in Ukraine for nearly two years after the second beating and, during that time, had no contact with his alleged persecutors except for anonymous phone calls. The IJ also reasoned that the country reports submitted by Yasinskyy show a reduction in politically motivated violence, and that nothing aside from Yasinskyy's own speculation suggests that the Yanukovych administration has made Ukraine more dangerous for nonsupporters. And the summonses Yasinskyy received did

not show he was likely to be persecuted because, the IJ concluded, Yasinskyy did not explain what "hooliganism" means under Ukrainian law, and thus he could not show that he was being unjustly charged or prosecuted for political activity that would be protected in the United States.

Finally, the IJ denied relief under the Convention Against Torture. The IJ noted that the analysis under CAT is "substantially similar" to withholding of removal and, because Yasinskyy did not show that the Ukrainian government was unwilling or unable to protect him from harm, "he could not meet the more narrowly and explicitly defined standard for government 'acquiescence' in the harmful activity." Moreover, although the State Department Country Report on Human Rights and Practices explains that torture by law enforcement officers is a serious problem in Ukraine, it also says that many state agents who engaged in torture were prosecuted for their misconduct, and thus Yasinskyy could not show that prisoners and detainees are more likely than not to be tortured.

Yasinskyy appealed to the BIA, which affirmed the IJ's order. First, the BIA concluded that the IJ correctly determined that Yasinskyy did not establish that his application for asylum was filed within one year of his arrival in the United States or that he fit into any of the exceptions. Next, the BIA agreed that Yasinskyy could not show past persecution or a clear probability of future persecution because (1) he did not show that the Ukrainian government condoned or was helpless to protect him from the beatings or threats made by unknown persons, and (2) his return to Ukraine after moving to England is inconsistent with the actions of a person fleeing persecution. Lastly, the BIA concluded that Yasinskyy did not provide

sufficient evidence suggesting that the Ukrainian government would torture him if he had to return.

## II. ANALYSIS

Yasinskyy does not address the timeliness of his asylum application, so we evaluate only his claims for withholding of removal and protection under CAT. The BIA adopted and supplemented the IJ's decision, so we review the IJ's decision as supplemented by the BIA. *See Munoz-Avila v. Holder*, 716 F.3d 976, 978 (7th Cir. 2013); *Mustafa v. Holder*, 707 F.3d 743, 750 (7th Cir. 2013).

### A. Denial of Withholding of Removal Supported by Substantial Evidence

Yasinskyy's brief on appeal suffers from a profound disconnect from reality. Most of his arguments fail to track the decisions of the IJ or the BIA, and he attributes quotes to the IJ that appear nowhere in the record. As the government notes, the arguments appear to have been lifted from some unrelated brief to the BIA.

Concerning withholding of removal, Yasinskyy insists that the IJ required him to prove that he was "seriously harmed" in order to show past persecution and thus relied on an incorrect legal standard. He adds that he "experienced considerable harm by local police, thugs, and other[s] controlled by the government militants" and "was kicked, beaten, collapsed and lost consciousness."

Yasinskyy's assertions mischaracterize the administrative record and, as the government contends, violate Rule 28(a)(9)(A) of the Federal Rules of Appellate Procedure. First,

the IJ did not require Yasinskyy to show that he was "seriously harmed." Instead, the IJ noted the fact-specific nature of the past persecution determination, compared Yasinskyy's alleged harms—which the IJ credited—to other asylum cases, and concluded that the evidence did not demonstrate harm rising to the level of persecution. Although we would have reached a different conclusion were we in the IJ's shoes (more on that later), the record does not support Yasinskyy's assertion that the IJ required a showing of serious harm. Second, Yasinskyy never testified that he was injured by "local police, thugs, and other[s] controlled by the government militants." Nor did he insist that those responsible for his injuries were acting on behalf of or with the approval of the government. Instead, he consistently testified that he did not know who had attacked him or made the threatening phone calls.

In the haystack of Yasinskyy's brief, however, there is a needle of truth. Yasinskyy says he collapsed after being kicked and beaten during the first attack. But Yasinskyy has not developed a legal argument about how that one incident—carried out by unknown assailants with no demonstrable connection to the government—equates to past persecution on account of political opinion. We will not entertain baseless and unsupported factual contentions or undeveloped legal arguments, *see* Fed. R. App. P. 28(a)(9)(A) (requiring that appellant's brief include his "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"); *Stevens v. Housing Auth. of South Bend, Ind.*, 663 F.3d 300, 310–11 (7th Cir. 2011); *Smeigh v. Johns Manville, Inc.*, 643 F.3d 554, 564 n.3 (7th Cir. 2011), and once the inaccurate facts are removed, there is no

basis for Yasinskyy's contention that he suffered past persecution. His brief does not address the IJ's or the BIA's conclusion about future persecution, and so any related argument is waived. *See Firishchak v. Holder*, 636 F.3d 305, 309 n.2 (7th Cir. 2011).

That said, we are bewildered by the IJ's assertion that a beating resulting in a concussion and kidney injury—requiring a week's stay in the hospital—followed by a second beating and countless telephone threats could not constitute persecution. The IJ assessed the harms to Yasinskyy by comparing his experiences to those of petitioners in previous cases before this court. That approach, however, "turn[s] the system upside down" by confusing our deferential review—asking whether the administrative record compels a finding of past persecution—with the role of immigration judges to draw on their expertise to decide whether the applicant actually has shown past persecution. *See Sirbu v. Holder*, 718 F.3d 655, 659-60 (7th Cir. 2013). Immigration judges must ask whether there was "the use of *significant* physical force against a person's body, or the infliction of comparable physical harm without direct application of force … or nonphysical harm of equal gravity" which crossed the line between harassment and persecution, i.e., "the line between the nasty and the barbaric[.]" *Stanojkova v. Holder*, 645 F.3d 943, 948 (7th Cir. 2011). We conclude that it did. But that does not help Yasinskyy because he did not demonstrate that the beatings and threats were carried out by the Ukrainian government or by a group that the government was unable or unwilling to control—a necessary element for showing past persecution, *see Almutairi v. Holder*, No. 12-2734, 2013 WL

3481356, at *7 (7th Cir. July 12, 2013); *Vahora v. Holder*, 707 F.3d 904, 908 (7th Cir. 2013). So his request for withholding of removal is doomed.

### B. Denial of CAT Protection Supported by Substantial Evidence

What remains is Yasinskyy's challenge to the denial of CAT relief, which is similarly deficient. He argues that the IJ did not recognize that withholding of removal and relief under CAT are analytically distinct. That contention is not true: The IJ recited the standard that the petitioner had to meet—that it is more likely than not that he would be tortured if returned to Ukraine, *see Bitsin v. Holder*, No. 12-2717, 2013 WL 2402855, at *8 (7th Cir. May 31, 2013)—but concluded that Yasinskyy had failed to meet his burden. Yasinskyy presses that the "country report on human rights practices" shows that he will be tortured if he returns because, he contends, "the police is always influenced by the ruling party to arrest and torture the opposing party members." Yasinskyy does not say, however, which of the two country reports he submitted supports that contention or provide any record citations, again violating Rule 28(a)(9)(A). But any citation would have been futile because the country reports contradict his argument. In fact, the 2008 and 2009 State Department reports, while acknowledging torture of prisoners and pretrial detainees, clarify that there were no reports of political prisoners or detainees.

### III. CONCLUSION

For the foregoing reasons, we DENY the petition for review.