**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 8, 2013
Decided November 25, 2013

**Before**

WILLIAM J. BAUER, *Circuit Judge*

RICHARD A. POSNER, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

No. 13-1389

| | |
|---|---|
| IGOR KLYUCHENKO,<br>    *Petitioner*, | Petition for Review of an Order of the<br>Board of Immigration Appeals. |
|   *v.* | No. A088-182-428 |
| ERIC H. HOLDER, JR., Attorney<br>General of the United States,<br>    *Respondent*. | |

**O R D E R**

Igor Klyuchenko, a Ukrainian citizen, applied for asylum and withholding of removal citing several beatings that members of a rival political party inflicted almost five years earlier. An immigration judge denied relief, and the Board of Immigration Appeals upheld that decision. Those courts reasoned that Klyuchenko had failed to demonstrate the Ukrainian government's inability or unwillingness to protect him or that he is likely to be persecuted if removed. Klyuchenko petitions for review, but substantial evidence supports the IJ's and the Board's conclusions, and thus we deny the petition for review.

## I. BACKGROUND

Klyuchenko entered the United States in November 2006 on an H-2B nonimmigrant visa that authorized him to work at a hotel in Orlando, Florida. He stayed in the country after his visa expired in August 2007. Klyuchenko traveled to Oregon and was arrested while obtaining a driver's license. The Department of Homeland Security served Klyuchenko with a Notice to Appear in February 2009, alleging that he had stayed longer than his visa permitted. *See* 8 U.S.C. § 1227(a)(1)(B). Klyuchenko moved to change venue from Seattle to Chicago and, in that motion, conceded the charge of removability. In August 2009 he applied for asylum and withholding of removal based on political opinion and membership in a particular social group.

At his removal hearing Klyuchenko testified that in 2002 he joined the Ukrainian National Assembly/Ukrainian National Self-Defense Organization ("UNA-UNSO"). The litigants offer no background about this organization, but UNA-UNSO is a small party (fewer than 10,000 members) that has been characterized as radically right-wing and associated with Ukrainian nationalism and neo-Nazi ideology. *See Neo-Nazi Organizations in the Ukraine*, GLOBAL RESEARCH, (Dec. 17, 2004), http://www.globalresearch.ca/neo-nazi-organizations-in-the-ukraine (last visited Nov. 20, 2013). UNA-UNSO supported opposition candidate Viktor Yushchenko against Viktor Yanuvokych in the 2004 presidential election.

According to Klyuchenko, he gave a speech at a campaign event in May 2004 and afterward was beaten by five unknown men, causing him to lose consciousness. Klyuchenko testified that the men told him to stop his political activities. He was treated at a hospital for a concussion and wounds to his head and chest. The next day Klyuchenko filed a complaint with the police, though he has never said what specific information he gave the authorities. The police accepted his complaint but told him a few months later that the case had been closed for lack of information.

Despite the assault, said Klyuchenko, he continued his political activities. In October 2004, he was sent by UNA-UNSO to a polling location to observe election preparations. Afterward he and another party member were attacked by seven people. Klyuchenko recognized two of them from the first beating and believed they were members of a rival political party. Onlookers called for an ambulance, and Klyuchenko was taken to a hospital and treated for a concussion and injuries to his knee, chest, and head. He was released the following day and once again filed a complaint with the police. The intake

officer was reluctant to listen to him, Klyuchenko testified, but ultimately accepted his complaint. As with the first incident, Klyuchenko has never said what specific information he gave the police. Klyuchenko later was told (he did not say when) that this investigation also had been closed. During his testimony Klyuchenko speculated that the police had been bribed.

When at first Yanukovych was declared the winner of the 2004 presidential election, Yushchenko supporters and international monitors cried fraud, sparking the Orange Revolution. Yushchenko supporters demonstrated in the streets, demanding that the Ukrainian Supreme Court invalidate the election results. Their efforts were successful, and after a new election was held, Yushchenko was inaugurated as president in January 2005. Klyuchenko continued supporting UNA-UNSO, and after a political gathering in March 2005, he was attacked again. He recognized a couple of the men from the earlier incidents and was warned, he said, that the four or five assailants would "finish him off" if he continued his political activities.

In a personal statement submitted with his asylum application, Klyuchenko said he reported this third incident to the police, and a document purportedly from the Ministry of International Affairs of Ukraine (the translation is not certified) states that a report was made on March 18, 2005. But when Klyuchenko testified at the asylum hearing, he never mentioned reporting this incident to the police.

Klyuchenko testified that he consulted an attorney after the March 2005 incident but was told that ceasing his political involvement was the only way to be safe. After receiving this advice, he continued, he decided to seek political asylum. Instead, though, he obtained an H-2B visa to work temporarily in the United States. He did not apply for asylum when he obtained the visa (or when he arrived in the United States). He explained during his testimony that he anticipated being denied a visa if he disclosed to embassy staff his fear of staying in Ukraine.

According to Klyuchenko, since his departure from Ukraine the police have contacted his parents asking about his whereabouts. The police, he added, also told his parents that his assailants have accused him of instigating one of the 2004 incidents, which is being investigated. Klyuchenko speculated that he will be subject to a criminal investigation if he returns to Ukraine. And, he continued, his parents have received phone calls from anonymous people threatening them with harm if he continues his political activities. Klyuchenko insisted that he will resume his support for UNA-UNSO if he returns to

Ukraine, and thus he fears being targeted again because Yanukovych was elected president in 2010 and still holds that position today.

The IJ credited Klyuchenko's testimony with the exception of his assertion that the police are now investigating him in connection with one of the beatings in 2004. It is implausible, the IJ reasoned, that an investigation would be active after so many years given that Klyuchenko never identified his assailants.

As to the requested relief, the IJ first concluded that Klyuchenko is ineligible for asylum because he did not apply within a year of entering the United States and did not assert that his circumstances satisfy any exception to that deadline. *See* 8 U.S.C. § 1158(a); 8 C.F.R. § 208.4(a).

The IJ next concluded, in addressing withholding of removal, that Klyuchenko had suffered significant harm but did not link that harm to a protected ground. That link is missing, the IJ reasoned, because Klyuchenko did not connect his assailants to the government of Ukraine. This reasoning conflates different elements of withholding of removal. One way of qualifying for that relief is to establish past persecution: that the applicant suffered harm at the hands of the government or its surrogate on account of a protected ground. 8 C.F.R. § 208.16(b); *Bathula v. Holder*, 723 F.3d. 889, 898 (7th Cir. 2013); *Jonaitiene v. Holder*, 660 F.3d 267, 270–71 (7th Cir. 2011). The IJ incorrectly implied that Klyuchenko could not have been assaulted on account of his political opinion or his membership in a social group comprised of "officially listed members of the political party UNA UNSO who are targeted by the police" because no evidence showed that he was targeted by the police.

The IJ further concluded that, without the presumption of future persecution which arises from a finding of past persecution, Klyuchenko's evidence did not demonstrate a clear probability that he will be persecuted in Ukraine. The IJ thought it significant that for almost two years after the last attack Klyuchenko had lived in Ukraine without incident except for a few calls from anonymous people threatening to harm his family. The IJ noted that recent State Department country reports show a decline in politically motivated violence, and reasoned that only Klyuchenko's speculation suggests he might be targeted due to his opposition to the current president. And, the IJ continued, Klyuchenko had not demonstrated that he will be unjustly charged and convicted with a crime if he is removed to Ukraine.

Klyuchenko appealed to the Board, which affirmed the IJ's order.  The Board agreed with the IJ that Klyuchenko had applied too late for asylum.  The Board also agreed with the IJ that Klyuchenko had not made a case for withholding because he did not establish that his assailants' actions could be attributed to the government of Ukraine or that he was targeted because of his membership in a particular social group.  The Board did not discuss the IJ's conclusion that political opinion was not shown to be a motivating factor in the assaults.

## II. ANALYSIS

Before addressing Klyuchenko's contentions, we note that his story is strikingly similar to the details of another recent case involving a Ukrainian citizen's claim for political asylum.  *See Yasinskyy v. Holder*, 724 F.3d 983 (7th Cir. 2013).  Klyuchenko and Andriy Yasinskyy were represented by the same attorney before the immigration court and Board, and the petitioners filed identical briefs with the Board that appear to be from a third, unrelated case.  As with Yasinskyy, the arguments Klyuchenko raised in his brief to the Board are unrelated to his case. The briefs of both petitioners mischaracterize the IJ's decisions in the same way and attribute the same inaccurate quotes to the IJ. *See id.* at 988. Beyond the identical briefs, Klyuchenko and Yasinskyy may be acquainted and were possibly arrested by immigration officials at the same time.  The two men allegedly were born a month apart in Ivano Frankivsk, Ukraine, and attended all of the same schools. Both testified that they were arrested in Oregon while applying for a  driver's license. *See id.* at 985.  Klyuchenko and Yasinskyy were detained at the same immigration facility and were served with a Notice to Appear on the same date (they also were assigned alien numbers just two digits apart).

What is more, their asylum claims rest on suspiciously similar details.  For example, as with Yasinkskyy, Klyuchenko allegedly was harmed three times while supporting Yushchenko during the 2004 election; he complained to the Ukrainian police but ultimately was told that the investigations had been closed due to lack of information; he remained in Ukraine unharmed for a period of time; his parents informed him after he reached the United States that it is unsafe to return to Ukraine; his parents received anonymous, threatening phone calls; his parents were visited by the police inquiring about their son's whereabouts; the police supposedly are investigating criminal complaints recently made against him by persons who attacked him in 2004 or 2005; he was arrested in Oregon and detained in an immigration facility in Washington state; and, finally, he also moved to change venue to Chicago.

The lawyers for both parties were unaware of the *Yasinksyy* case before we brought it to their attention at oral argument. One or both petitioners invariably has deceived the immigration courts and the Board, but even if Klyuchenko's story is true, he is not entitled to relief. Our review is limited to his application for withholding of removal, since the determination that he did not timely apply for asylum is unreviewable. *See* 8 U.S.C. § 1158(a)(3). We review the decisions of both the Board and the immigration court for substantial evidence because the Board adopted the IJ's decision but also added its own analysis. *See Munoz-Avila v. Holder*, 716 F.3d 976, 978 (7th Cir. 2013); *Barradas v. Holder*, 582 F.3d 754, 762 (7th Cir. 2009); *Kaharudin v. Gonzales*, 500 F.3d 619, 622 (7th Cir. 2007).

Klyuchenko challenges the conclusions of the IJ and Board that he failed to prove that the Ukrainian government is unable or unwilling to protect him. The authorities must have been unwilling to actively pursue his complaints, he argues, because the police did not arrest his assailants or, he insists, complete a full and thorough investigation. But the absence of arrests does not compel the conclusion that the government of Ukraine was unable or unwilling to protect him. *See Ingmantoro v. Mukasey*, 550 F.3d 646, 650 (7th Cir. 2008); *Hernandez-Baena v. Gonzales*, 417 F.3d 720, 724 (7th Cir. 2005). After the first two attacks (and the third as well, according to the IJ), Klyuchenko went to the police station and made a report. Although Klyuchenko asserts that on the second occasion the officer did not want to listen to him, the officer ultimately accepted his complaint. *Compare Ingmantoro*, 550 F.3d at 650 (concluding that alien failed to establish Indonesian government's inability or unwillingness to protect him since police had accepted complaints even though making no arrests), *and Hernandez-Baena*, 417 F.3d at 724 (concluding that alien had not established that Colombian government was unable or unwilling to protect him because, although no arrests were made, police accepted report and monitored his phones to intercept further threats), *with Hor v. Gonzales*, 421 F.3d 497, 498–99, 502 (7th Cir. 2005) (concluding that record contained strong evidence of Algerian government's inability to protect army veteran from radical Islamist group since military had warned it could not protect him, and Algerian court had advised that he keep a low profile), *and Guchshenkov v. Ashcroft*, 366 F.3d 554, 556–58 (7th Cir. 2004) (concluding that evidence suggested that Kazakhstan government was unable or unwilling to protect ethnic-minority citizen who went to police seven times after numerous attacks but was told that police were overburdened with other cases and his file had been lost). Further, although Klyuchenko assumes that full investigations of his complaints were not conducted, he did not offer any evidence that the police, by closing a case in which they apparently had no information on the alleged attackers' identities, were deviating from standard operating procedure. *See Jonaitiene*, 660 F.3d at 271 (explaining that allegation of police inaction raises

no inference of government complicity if petitioner fails to show reason for inaction or that handling of case deviated from standard operating procedure); *Ingmantoro*, 550 F.3d at 650 (concluding no government complicity when petitioner reported incident and police visited scene of incident but did not make arrests). Nothing suggests that the absence of a prosecution is attributable to more than a lack of information. Substantial evidence supports the Board's conclusion that Klyuchenko did not establish that the attacks he suffered were perpetrated by, or attributable to, Ukrainian authorities.

That is enough to uphold the determination that Klyuchenko did not suffer past persecution, but we note that the IJ misunderstood the asserted connection between the alleged assaults and a protected ground, in particular political opinion. That Klyuchenko was unable to link his assailants to the government of Ukraine is not to say that he failed to establish that the attackers were motivated to act because of his political opinion. If Klyuchenko is believed, he was beaten on three occasions by members of a rival political party and, as a result, was hospitalized twice with concussions from head injuries as well as wounds to his knees and chest. The harm appears to have been inflicted because of Klyuchenko's political involvement: All of the beatings followed UNA-UNSO events, and he testified that during two of the incidents his assailants warned him to stop his political activities. That evidence surely raises an inference that the assaults were "on account of" his political opinion. *See Nakibuka v. Gonzales*, 421 F.3d 473, 475, 478 (7th Cir. 2005); *Tolosa v. Ashcroft*, 384 F.3d 906, 910 (7th Cir. 2004). But, again, because Klyuchenko failed to show that the Ukrainian government is unwilling or unable to protect him, he did not establish past persecution on this basis or any other.

Finally, substantial evidence supports the conclusion of the IJ and the Board that Klyuchenko did not establish he is more likely than not to face future persecution in Ukraine. Because Klyuchenko did not demonstrate past persecution, he cannot benefit from a presumption of future persecution. *See* 8 C.F.R. § 208.16(b)(1)(I); *Zheng v. Holder*, 722 F.3d 986, 990 (7th Cir. 2013). Klyuchenko contends, however, that he independently established a clear probability that he will face future persecution. He cites to the State Department's country report for 2009 and a Human Rights Watch report from 2011 as evidence of increased political tension in Ukraine resulting from Yanukovich's election as president in 2010. Although these reports explain that Ukraine continues to struggle with corruption and police abuse, the country report refers to successful prosecutions of political violence and police abuse. Moreover, the generalized reports Klyuchenko offers say nothing about violence targeting members of UNA-UNSO and will not substitute for an

analysis of the facts of his individual circumstances. *See Milanouic v. Holder*, 591 F.3d 566, 571 (7th Cir. 2010); *Koval v. Gonzales*, 418 F.3d 798, 807 (7th Cir. 2005).

On a final note, the IJ did not credit Klyuchenko's testimony that Ukrainian police have begun investigating him, but even if his testimony is true it would not matter. Inquiries by authorities seeking Klyuchenko's location but without threatening his life or freedom do not compel a conclusion of future persecution. *See* 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 1208.16(b); *Liu v. Holder*, 692 F.3d 848, 853 (7th Cir. 2012) (concluding that visits by Chinese government official requesting information about petitioner's whereabouts was insufficient alone to compel conclusion of future persecution). Klyuchenko alleges that the Ukrainian police are investigating a complaint made against him by his alleged assailants, but nothing suggests that the investigation is anything other than legitimate. *See Chatta v. Mukasey*, 523 F.3d 748, 753 (7th Cir. 2008) (concluding that an investigation into petitioner's involvement in the stabbing of his assailant was not impermissible persecution); *Guchshenkov*, 366 F.3d at 559. Klyuchenko is a member of an organization with its own history of violence directed at political opponents, so the possibility that the police might be suspicious of Klyuchenko's accounts of unprovoked attacks would not be surprising. *See Ukrainian National Assembly – Ukrainian National Self Defence*, Wikipedia, http://en.wikipedia.org/wiki/ Ukrainian_National_Assembly_-_Ukrainian_National_Self_Defence (last visited Nov. 20, 2013); *Ossetia demands to recognize UNA-UNSO as a terrorist organization*, Forum, http://en.for-ua.com/news/2008/09/24/ 151006.html (last visited Nov. 20, 2013). And an investigation into an incident that would be a crime in the United States does not constitute persecution. *Chatta*, 523 F.3d at 753; *Guchshenkov*, 366 F.3d at 559. The investigation of a complaint made against Klyuchenko that he initiated one of the 2004 incidents does not compel a conclusion that he is being targeted by the police for impermissible reasons.

### III. CONCLUSION

The petition for review is **DENIED.**