**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 9, 2018[*]
Decided March 14, 2018

**Before**

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 17-1702

| | |
|---|---|
| MARK BROCK,<br>    *Plaintiff-Appellant,*<br><br>*v.*<br><br>WILLIAM WILSON, et al.,<br>    *Defendants-Appellees.* | Appeal from the United States District Court for the Southern District of Indiana, Terre Haute Division.<br><br>No. 14-CV-00170-JMS<br><br>Jane E. Magnus-Stinson,<br>*Chief Judge.* |

**O R D E R**

Mark Brock suffers from fibromatosis, a condition that causes skin cells to grow into non-metastasized but painful tumors. While incarcerated at the Federal Correctional Institution in Terre Haute, Indiana, he received three surgeries for recurrences of his fibromatosis. Brock has sued prison medical personnel under *Bivens*

---

[*] We have agreed to decide the case without oral argument because the legal issues have been authoritatively decided. See FED. R. APP. P. 34(a)(2)(B).

*v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), and the United States under the Federal Tort Claim Act, 28 U.S.C. § 2674, over the timing of his latest surgery. The district court entered summary judgment for the defendants. Because the record does not permit an inference that any defendant acted unreasonably or with deliberate indifference, we affirm.

We recount the facts in the light most favorable to Brock, the nonmovant. See *Tradesman Int'l, Inc. v. Black*, 724 F.3d 1004, 1009 (7th Cir. 2013). Brock was diagnosed with fibromatosis when he was a child. By 2011 he had received two surgeries in prison to remove fibroid tumors, also called fibromas. Eight months after his last surgery, a prison physician observed in November 2011 that Brock had a new "nodule" on his chest wall about three centimeters long. He asked for Brock to see an oncologist. The prison contracts with a company called NaphCare (which is not a defendant) to schedule visits with outside medical providers. According to the Clinical Director of the prison's Chronic Care Clinic, Dr. William Wilson, NaphCare is reliable and has never failed to schedule someone for an appointment with an outside surgeon or specialist.

With NaphCare's help, Brock saw an outside oncologist the next month, in December. The oncologist ordered CT scans for Brock (which occurred five days later) and wanted Brock to follow up with the same cardiothoracic surgeon who had performed Brock's last surgery. That surgeon saw Brock a month later, in January 2012, and recommended surgery in the near future to remove the mass. But the surgeon was leaving the state, so Brock had to consult with another surgeon.

Brock saw several surgeons in 2012. Three months after his previous surgeon had recommended surgery, Brock met with a new cardiothoracic surgeon. After reviewing Brock's CT scan, this surgeon disagreed with the need for surgery, concluding that the new mass may be either postsurgical scar tissue or related to radiation changes. To be sure, he ordered new CT scans, which occurred three months later, in June. The scans suggested "an enlargement of [Brock's] left breast mass with a mass lesion," so Brock saw another cardiothoracic surgeon for a biopsy. When they met two months later, that surgeon needed another CT scan before a biopsy or further treatment. Brock met Dr. Wilson, the prison's clinic director, three months later, and he ordered the CT scan and wanted Brock to see a surgeon in Indianapolis "as soon as possible." Dr. Wilson selected Indianapolis because he could not find an available surgeon in Terre Haute. He suggested transferring Brock out of state for a surgeon, but without a biopsy first confirming that his new mass was fibromatosis, the prison would not transfer him.

Brock underwent the biopsy in April 2013, and surgery came afterwards. The biopsy confirmed that the mass was recurrent fibromatosis. A month after the biopsy, Dr. Wilson arranged for Brock to see another general surgeon, who needed a new CT scan to see if the mass was attached to Brock's chest wall, in which case it would need to be evaluated by a thoracic surgeon. Dr. Wilson requested the scan, which occurred in September. By this time the mass had grown to almost 8 centimeters by 5 centimeters. In November Brock met with a surgeon who reviewed the latest scan and, in January 2014, recommended the surgery. Dr. Wilson accepted the recommendation and ordered the surgery, which occurred in February 2014.

Brock was in pain from the tissue mass since February 2012. He received pain relief for it, but prison administrators discontinued the medication from July 2012 to March 2013 as a disciplinary sanction after Brock gave his medicine to another inmate. In March Dr. Wilson restarted Brock's pain medication based on Brock's agreement to follow the prison's rules.

The case ended at summary judgment. The district court granted the United States' motion for summary judgment on Brock's claim under the Federal Torts Claims Act that the prison's medical staff negligently delayed surgery. The judge reasoned that undisputed medical testimony from two independent experts showed that Brock's care was medically appropriate. The court also granted summary judgment in favor of the individual defendants. It ruled that the judgment for the United States on the negligence claim barred Brock's *Bivens* claim against the defendants for deliberate indifference in violation of the Eighth Amendment.

On appeal Brock does not question the district court's analysis or cite any applicable legal authority. We could dismiss the appeal on this ground. See FED. R. APP. P. 28(a)(8)(A); *Yasinskyy v. Holder*, 724 F.3d 983, 989 (7th Cir. 2013). But we have reviewed the record de novo to assure ourselves that the district court's decision is sound. See *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017). And it is.

We begin with the Federal Torts Claim Act against the United States. We apply Indiana's law of negligence because claims under the Act are analyzed "in accordance with the law of the place where act or omission occurred." 28 U.S.C. § 1346(b). To survive summary judgment, Brock must present evidence of a "(1) duty owed to plaintiff by defendant; (2) breach of duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury proximately caused by defendant's breach of duty." *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016) (quoting *King v. Ne. Sec., Inc.*, 790 N.E.2d 474, 484 (Ind. 2003)). A

custodian of inmates must "take reasonable steps under the circumstances for the life, health, and safety of the detainee." *Kader v. State*, 1 N.E.3d 717, 728 (Ind. Ct. App. 2013) (quoting *Sauders v. Cnty. of Steuben*, 693 N.E.2d 16, 18 (Ind. 1998)).

Brock argues that the United States breached its duty of care because it took over two years, from November 2011, when a prison doctor first detected the tissue mass, to February 2014 for the surgery to take place. But the defendants' experts stated that the timing was medically reasonable, and Brock did not rebut that evidence. Indiana typically requires expert medical testimony "to determine whether a physician's conduct fell below the applicable standard of care." See *Bader v. Johnson*, 732 N.E.2d 1212, 1217–18 (Ind. 2000). Expert testimony is not required if the facts are not overly technical, see *id.,* but the details of chronology here do not suggest liability.

We start by examining the chronology between November 2011 and April 2013. NaphCare took two months, until January 2012, to get Brock to meet the oncologist who recommended surgery. This two-month period is not a basis for liability. NaphCare is not a defendant, and based on Wilson's unrefuted testimony, he reasonably delegated to NaphCare the job of finding professionals outside the prison. The prison's medical staff also reasonably required that Brock have several evaluations in 2012 and 2013. The outside surgeon who recommended in January 2012 that Brock have surgery was not available to perform it. The next outside surgeon whom Brock saw did not recommend surgery without a new CT scan. A reasonable disagreement between these two doctors over a treatment plan does not establish that one has diverged from the standard of care. *Estate of Cole v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996). And Dr. Wilson's decision to follow the latter surgeon's advice was reasonable because "both recommendations [were] made by qualified medical professionals." *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 797 (7th Cir. 2014). NaphCare scheduled the CT scans for June and a visit with another outside surgeon two months later for a needed biopsy. That outside surgeon, who is also not a defendant and whose judgment is not questioned, required another CT scan. Dr. Wilson reasonably relied on that surgeon's advice and ordered the CT scan, which became available three months later. True, some of the out-of-prison exams took time to schedule, and the biopsy did not occur until April 2013. But the scheduling problems are attributable to an apparent dearth of available local surgeons, not the defendants' disregard about the need for exams and treatment.

The second stage of this chronology, leading to the surgery in February 2014, was also medically reasonable. The period between the biopsy in April 2013 and the surgery was spent updating the CT scans, which a qualified doctor recommended, and finding

an available outside thoracic surgeon and general surgeon, as none was locally available. And once Dr. Wilson received the recommendation for surgery in January 2014, it occurred one month later—a reasonable period. The record thus contains no basis to find that the United States breached a duty of care.

Brock has also not met his burden to show evidence of a compensable injury. He has presented no evidence that he suffered any permanent, adverse health effects from the delay. Brock responds that for nine months (from July 2012 to March 2013), prison administrators denied him pain relief from the fibroma as a sanction for his misuse of medicine. Needless pain can be a basis for liability. *Perez v. Fenoglio*, 792 F.3d 768, 778 (7th Cir. 2015) ("A delay in treatment may show deliberate indifference if it exacerbated the inmate's injury or unnecessarily prolonged his pain."). But Brock, who was represented by recruited counsel in the district court, did not present facts showing that any of the named defendants instigated that sanction. Without the personal involvement of the defendants in the decision to deny Brock pain relief, they cannot be liable for that decision. *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010).

That brings us to the *Bivens* claim that the individual defendants violated the Eighth Amendment. The district court properly dismissed this claim once it decided in favor of the United States on the claim under the Federal Tort Claims Act. The Eighth Amendment's standard is deliberate indifference, *Farmer v. Brennan*, 511 U.S. 825, 828 (1994), which is more demanding than negligence. And when the United States wins summary judgment, the Act bars recovery from the individual defendants. See 28 U.S.C. § 2674 ("The judgment in an action under section 1346(b) of this title shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim.").

Accordingly, the judgment is AFFIRMED.