┌─────────────────────────────────────────────┐
│           **NONPRECEDENTIAL DISPOSITION**           │
│ To be cited only in accordance with Fed. R. App. P. 32.1 │
└─────────────────────────────────────────────┘

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued February 27, 2019
Decided March 26, 2019

**Before**

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 18-2392

| | |
|---|---|
| LOVERT TCHOUGOUE | Petition for Review of an Order of the |
| *Petitioner*, | Board of Immigration Appeals. |
| | |
| *v.* | No. A213-089-410 |
| | |
| WILLIAM P. BARR | |
| Attorney General | |
| of the United States, | |
| *Respondent*. | |

**O R D E R**

Lovert Tchougoue, a 22-year-old citizen of Cameroon, petitions for review of the Board of Immigration Appeals' denial of his application for asylum after he was beaten by police for protesting government policies that have violently divided Francophones and Anglophones. An immigration judge denied relief, finding that Tchougoue was not credible and failed to corroborate his claim of political persecution sufficiently. The

Board assumed that Tchougoue was credible, but affirmed the denial of relief on grounds that he had not established persecution. Because the Board applied the wrong legal standard to Tchougoue's claim, we grant the petition for review and remand the case for further proceedings.

Tchougoue's asylum claim arises from his involvement in protests against the Cameroon government over the dominance of the French language in the Anglophone region of northwest Cameroon. The increasingly violent conflict between Anglophones and the Francophone majority began in late 2016 when teachers and lawyers in the Anglophone regions, including Tchougoue's hometown of Bamenda, went on strike for months to protest their marginalization and forced assimilation by the Francophone government. *See e.g.*, U.S. Department of State, 2018 Human Rights Report: Cameroon 1–2. The government responded by arresting and killing protesters, and the crackdown spawned a violent, secessionist movement demanding an independent Anglophone state called Ambazonia. *Id*. at 1, 3, 9-10. In search of separatists, the government burned homes in the country's Anglophone regions, and indiscriminately killed civilians, causing hundreds of thousands of Anglophones to flee from Cameroon's English-speaking northwest and southwest regions. *Id*. at 15, 22-23; *see also U.S. Concerned over Uptick in Violence in Cameroon*, U.S. DEPARTMENT OF STATE (Nov. 6, 2018), https://www.state.gov/r/pa/prs/ps/2018/11/287178.htm.

In 2016, when he was a university student in Bamenda, Tchougoue joined a student protest of the government's use of French in schools. He was arrested by police on November 11, 2016,[1] and taken to prison. The police accused him of being a leader of the protests and, for two days, held him in a cell and repeatedly beat, slapped, and kicked him, leaving scars on his body and back. Tchougoue managed to escape and fled to his grandmother's village ten kilometers away.

For the next six months, Tchougoue hid at his grandmother's house. But on May 23, 2017, upon venturing to a store, he was picked up by another police officer, who, accusing Tchougoue of being a leader of the student protest, arrested him, beat him, slapped him, and forced him into a police car. Again Tchougoue escaped, jumping out of the police car before he arrived at prison. Tchougoue later contacted his mother, who

---

[1] Tchougoue testified at his hearing that police arrested him in 2017, but in his appeal to the Board he corrected himself and wrote that he meant to say 2016. For purposes of its decision, the Board assumed "without deciding" that the correction was true.

told him that police had come to the house looking for him. He then returned to his apartment in Bamenda to collect his things and found his apartment in disarray—presumably the aftermath of a police search.

Tchougoue scooped up his bags and trekked on foot for ten days until he reached Nigeria. He worked there for two months to gather funds, flew to Ecuador, and then via Mexico entered the United States. At the California border, he applied for admission to the United States without a visa and was detained. He remains detained at a facility in Chicago.

A month after his entry, the Department of Homeland Security served him with a notice to appear in removal proceedings for his entry without a visa. At a later hearing before the immigration judge, Tchougoue applied for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). (Tchougoue now proceeds only on his asylum claim.) The IJ told Tchougoue about the importance of corroborating evidence to support his application, and scheduled another hearing a month later.

At the next hearing, the IJ denied all of Tchougoue's applications. The IJ found that Tchougoue's testimony was neither plausible nor believable; that even if he had testified credibly, the alleged harm did not rise to the level of persecution; that he had not sufficiently corroborated his claims; and that any fear of future persecution he had was not objectively reasonable.

Tchougoue appealed to the Board, which upheld the IJ's decision. Though the Board assumed (without deciding) that Tchougoue had testified credibly, it concluded that his past experiences—albeit "distinctly unpleasant"—"did not reach the level of 'persecution.'" In reaching this conclusion, the Board analogized Tchougoue's situation to cases in which we held that the record "did not compel [the] conclusion" of persecution. Without corroboration, the Board added, Tchougoue could not establish a well-founded fear of persecution.

Tchougoue opens his petition by challenging the IJ's adverse credibility determination on grounds that it relied upon minor inconsistencies that were reasonably explainable. In particular, he contends that the IJ wrongly discredited him for inadvertently misstating the year of his arrest and for not adding more details about his detention. Although we note that the grounds for the credibility ruling are thin and the inconsistencies trivial, we can assume for purposes of our review that Tchougoue is

credible: when he appealed this issue to the Board, the Board assumed—without deciding—that Tchougoue was credible, and we will operate from the same assumption. *See Sibanda v. Holder*, 778 F.3d 676, 679 (7th Cir. 2015).

Tchougoue asserts that the IJ erred in requiring additional corroborative evidence because the IJ failed to specify what evidence he would have liked to have seen and whether the evidence was readily obtainable or reasonably available. In his oral ruling, the IJ found that Tchougoue "offered no corroborating evidence." But Tchougoue does not develop this point and, in any case, the IJ may require corroborating evidence under the REAL ID Act, *see* 8 U.S.C. § 1158(b)(1)(B)(ii), even if the applicant is credible, as long as that evidence is reasonably available. *See Raphael v. Mukasey*, 533 F.3d 521, 527 (7th Cir. 2008). Neither the IJ nor Tchougoue discussed whether the evidence was reasonably available (and arguably it was not given Tchougoue's escape, abrupt flight from Cameroon, his instant detention in the U.S., and his prompt immigration hearing). But Tchougoue did not demonstrate that corroborative evidence was reasonably unavailable, as was his burden to do so. *Id.* at 529.

Tchougoue's stronger argument is that the Board applied the wrong legal standard when it relied on our precedent to define what type of conduct constitutes persecution. The Board made this mistake, he says, by improperly analogizing his experiences to those of other petitioners in cases in which we concluded that the harm did not reach the level of persecution:

> Assuming the respondent's credibility, we conclude that his past experiences in Cameroon, while distinctly unpleasant, did not reach the level of "persecution." *See Orellana-Arias v. Sessions*, 865 F.3d 476, 487 (7th Cir. 2017) (explaining that under the Seventh Circuit law, "minor injuries . . ., albeit traumatic, do not rise to the level of persecution," and collecting cases so holding); *see also Mekhtiev v. Holder*, 559 F.3d 725, 729–30 (7th Cir. 2009) (finding that one overnight detention and beating was not severe enough to constitute persecution); *Mema v. Gonzales*, 474 F.3d 412, 416–18 (7th Cir. 2007) (holding that abduction at gunpoint followed by detention and physical abuse, resulting in petitioner losing consciousness, did not compel conclusion that petitioner suffered past persecution); *Dandan v. Ashcroft*, 339 F.3d 567, 573–74 (7th Cir. 2003) (holding that record did not compel conclusion that petitioner suffered persecution based on a single incident where he was detained and deprived of food for three days

and "beaten to the extent that his face became 'swollen,'" because petitioner needed to provide more detail).

He is correct—the Board conflated our deferential standard with its own by improperly relying on our case law to conclude that Tchougoue's experiences did not reach the level of past persecution. Our standard of judicial review is whether the evidence *compels* a finding of past persecution while the Board's administrative review is whether the applicant *actually* has shown past persecution—a less demanding standard that requires the agency to apply its expert judgment in the first instance. *See Sobaleva v. Holder*, 760 F.3d 592, 597–98 (7th Cir. 2014); *Sirbu v. Holder*, 718 F.3d 655, 658–60 (7th Cir. 2013); *Yasinskyy v. Holder*, 724 F.3d 983, 989 (7th Cir. 2013). When the agency abdicates this responsibility by treating our deferential standard as the substantive standard, it "turns the system upside down" by unfairly ratcheting up the standard and applying a circular logic. *Plaza-Ramirez v. Sessions*, 908 F.3d 282, 285 n.1 (7th Cir. 2018); *Yasinskyy*, 724 F.3d at 989. The Board's "reliance on a simple comparison to our cases disregarded the fact that when we apply deferential judicial review, we 'expect the immigration judge and the Board to exercise their independent judgment and expertise in deciding whether the abuse of an applicant for asylum rose to the level of persecution.'" *Sobaleva*, 760 F.3d at 597 (quoting *Sirbu*, 718 F.3d at 658.) The Board's boilerplate summary—on top of its assumption that Tchougoue testified credibly— reflects no independent judgment or expertise. Remand is necessary so that Tchougoue's evidence of past persecution can be evaluated under the proper standard.

Also problematic in the IJ's and Board's decisions is that neither gave adequate consideration to the content of Tchougoue's testimony. Even if Tchougoue cannot establish past persecution (and thereby is ineligible for the presumption that he has a well-founded fear of future persecution), he can establish a fear of future persecution if the fear is subjectively genuine and objectively reasonable. *See Diallo v. Ashcroft*, 381 F.3d 687, 699 (7th Cir. 2004). The IJ and the Board found that he faltered on the objective test by not presenting sufficiently detailed evidence, but this finding ignored Tchougoue's testimony about the political unrest and his repeated encounters with the police. In his testimony—which, again, the Board assumed to be credible—Tchougoue said that he was arrested because he joined a student protest on November 11, 2016 after teachers and lawyers took to the streets to protest the government's language policies; that he endured two episodes of police beatings because of his involvement in the protests; that the police had tracked down his mother's home to inquire about him and searched his own apartment; and that he went into hiding for half a year out of fear of the police before being apprehended and beaten again on May 23, 2017. If this

testimony is deemed sufficiently persuasive and detailed, it can satisfy his burden of proof, even without corroboration. *See Xiang v. Lynch*, 845 F.3d 306, 309 (7th Cir. 2017).

Because the Board (1) erroneously applied the wrong legal standard to determine whether Tchougoue experienced persecution and (2) failed to consider all of Tchougoue's testimony, we grant the petition for review and remand the case to the Board so that it can evaluate, in the first instance, whether Tchougoue established persecution.